UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
KEVIN COHEN,

Plaintiff,

-against-

COUNTY OF NASSAU, NASSAU COUNTY SHERIFF'S
DEPARTMENT, NASSAU COUNTY DIVISION OF
CORRECTIONS, NASSAU COUNTY CORRECTIONAL
CENTER, NASSAU COUNTY JAIL, MICHAEL ADAMS,
MICHAEL J. SPOSATO, PATRICK MCDEVITT, JOHN
COLLAHAN, NASSAU COUNTY DISTRICT ATTORNEY'S
OFFICE, KATHLEEN M. RICE, MEG REISS, CHARLES
RIBANDO, BENJAMIN VOLPICELLO, ROBERT NIGRO,
NASSAU COUNTY DEPARTMENT OF PROBATION,
JANE LAURO, NASSAU HEALTH CARE CORPORATION,
NASSAU UNIVERSITY MEDICAL CENTER, KAMIL ATTA,
JOSEPH DOE, LAURA DOE, STEVEN ZANON,
ZANON JORDAN & CO., P.C., JOHN C. SULLIVAN,
LAWRENCE MAHON, MAHON, MAHON, KERINS & O'BRIEN,
L.L.C., DANIEL GALE ASSOCIATES, ABC TITLE INSURANCE
CO., XYZ ABSTRACT CO., JANE DOE, JOHN DOE,

Defendants.
-----------------------------------------------------------------------X
FEUERSTEIN, District Judge:

**ORDER**
10-CV-5836 (SJF)(ETB)

I.      Introduction

Pending before the Court is the complaint of incarcerated *pro se* plaintiff Kevin Cohen
("plaintiff") alleging violations of 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 1985
("Section 1985"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.
§§ 1961 *et seq.*, and the Health Insurance Portability and Accountability Act ("HIPAA"), 42

U.S.C. § 1320d *et seq.*, accompanied by an application to proceed *in forma pauperis*. Plaintiff's financial status, as set forth in the declaration in support of his application to proceed *in forma pauperis*, qualifies him to commence this action without the prepayment of the filing fees. *See* 28 U.S.C. § 1915(a)(1). Accordingly, the application to proceed *in forma pauperis* is GRANTED. However, for the reasons set forth below, the complaint is *sua sponte* dismissed in part with prejudice and in part without prejudice.

II.     The Complaint

Plaintiff, an attorney, was convicted of grand larceny, forgery and other charges arising from his theft of approximately three hundred thousand dollars ($300,000.00) from prospective adoptive parents for unrealized adoptions. Plaintiff's brief complaint is accompanied by an additional one hundred fifty-four (154) pages consisting largely of handwritten "exhibits" that are a hodgepodge of documents plaintiff has created and accumulated concerning the sale of real property plaintiff allegedly owned prior to his incarceration. It appears that plaintiff, as the beneficiary of a testamentary trust that was created upon the death of his father, Michael Cohen, inherited real property located at 250 Chestnut Street in East Hills, New York (the "property"), valued at approximately one million, three hundred thousand dollars ($1,300,000.00). *See* Document annexed to the Compl. as 1-1 at page 29. Plaintiff appears to claim that he was deprived

> of his due process right to make any sort of a personal appearance on
> behalf of his personal financial . . . ownership interests with respect

to [t]rustee Steven Zanon's[1] petition under the will of Michael S. Cohen, to sell the real property located at 250 Chestnut Drive, East Hills, New York . . . .

Compl. at 16. Plaintiff alleges that the Surrogate's Court, County of Nassau ("Surrogate's Court") approved Mr. Zanon's petition to have the property sold, which occurred on August 24, 2010, and plaintiff was denied the opportunity to be released from prison in order to make an appearance in the Surrogate's Court to oppose the petition. *See* Document 1-2 annexed to the complaint at pages 10, 14. Accordingly, plaintiff seeks to void the sale because he was not allowed a temporary release from prison in order to personally appear in court. *See* Document 1 annexed to the complaint at page 11. The documentation submitted with the complaint reflects that the real property at issue was sold because money was needed to support plaintiff's children. The sale was pursuant to a stipulation submitted to the Surrogate's Court and signed on plaintiff's behalf by his court-appointed *guardian ad litem*.[2] *See* Document 1-2 annexed to the complaint at pages 14-17.

The complaint further alleges that

> [d]efendants (jointly and severally) have acted in order to deprive and have deprived [p]laintiff of his constitutionally-protected right to due process of law with respect to his inalienable rights to liberty (criminal matter, Indictment Number 2281N09) and property (Surrogate's Court File Number 322866), which deprivation would not have (and could not have) occurred <u>but for</u> [p]laintiff's incarceration . . . .

---

[1]According to the complaint, Steven Zanon is the trustee and the real property is part of the trust. *See* Document 1 annexed to the complaint at page 4.

[2]By Order dated January 7, 2010, H. William Hodges, III, Esq. was appointed to serve as *guardian ad litem* for plaintiff during the Surrogate's Court proceeding. *See* Doc. 1-3 at page 9, annexed to the complaint.

Compl. at 8-9 (emphasis in original). According to the complaint, "defendants have conspired, planned and taken numerous substantial steps in furtherance of said deprivation of due process right (triggering the additional applicability of Title 42 Section 1985 of the United States Code)." *Id.* at 9 (emphasis in original). The complaint continues:

> Defendants' actions in deprivation of plaintiff's civil rights with regard to Nassau County Indictment Number 2281N09 began upon his arrest when he was interrogated by (and issued an oral and written statement to) prosecutors unaccompanied by his attorney-of-record in an inextricably linked and 'related' matter. Almost immediately thereafter, defendants tampered with plaintiff's unencumbered and unadulterated use of the outgoing United States mail stream for the transmittal of defense-related documentation (both exculpatory and mitigating) which still persists. Moreover, defendants have tampered with advocative [sic] efforts of no fewer than two [2] attorneys-of-record and psychological professionals, all of whom have been incentivized [sic] by reward and/or threat to abridge [p]laintiff's ability to stage an adequate defense and thereafter restricted his constitutionally-granted and/or protected right to represent himself in the matter pro se after he terminated both previous attorneys for said obstruction.

*Id.* at 9-10 Plaintiff also alleges that

> [d]efendants have materially misrepresented facts both by commission and omission in a sentence-determinative probation report (investigation), and violated [p]laintiff's privacy rights regarding his medical and/or mental health records. Lastly (to date) plaintiff was assaulted by a defendant corrections officer some two weeks before trial, which assault was re-orchestrated into an assault by the plaintiff for which he was arrested yet exhonerated [sic] by a grand jury soon thereafter, which accusation of plaintiff violence was effective at temporarily estopping then-pending (and violence disqualifying) Bail Modification and Judicial Diversion applications and resulted in an unsuccessful attempt via Pro Se Advisory Counsel Adam Moser to broker a plea bargain utilizing said accusation (felonious in and of itself) as perceived negotiating leverage therefor.

*Id.* at 10-11. Plaintiff describes the voluminous exhibits annexed to the complaint as "clearly

delineating and demonstrating the actions and overlapping/overarching conspiracy . . . ." *Id.* at 11. It appears that plaintiff expects the Court to identify all possible claims involving his "due process rights" against the thirty-one (31) named defendants to be found in over one hundred fifty (150) pages of exhibits, many of which are handwritten an indecipherable.[3] *Id.* at 11-13 This, the Court declines to do.

It appears from the complaint that, in addition to his claims regarding the sale of the real property, plaintiff claims that (1) defendants tampered with his outgoing mail, and (2) he was assaulted by a corrections officer and was later arrested for that assault in order to sabotage his applications for bail modification and judicial diversion. *Id.* at 9, 10-11.

Plaintiff seeks to recover a number of remedies and damages including: "trial costs borne by plaintiff (Oct. 4-Nov. 1, 2010)"; "incarceration costs since October 4, 2010"; "*Pro Se* Advisory Counsel Fees"; "voidance of [the Surrogate's Court] sale of 250 Chestnut Drive" and "rehabitation/repossession of premises by plaintiff and/or his family"; "*guardian ad litem* fees"; "closing costs and capital improvements"; "trustee's attorney's fees"; and "pain and suffering (Physical and Emotional - Aggravated)." Compl. at 15-18.

---

[3]For example, one of the many exhibits referenced is a handwritten document entitled "The WHOLE TRUTH, NOTHING BUT THE WHOLE TRUTH, So Help ALL HEAL, SO HELP me GOD (with people people people law) PART ONE." (Document 1-1 at 8). The next page appears to be a Division of Corrections Disciplinary Report Form with handwritten annotations, presumably made by the plaintiff.

III.  Discussion

A.  *In Forma Pauperis* Application

Upon review of plaintiff's declaration in support of his application to proceed *in forma pauperis*, the Court finds that plaintiff's financial status qualifies him to commence this action without prepayment of the filing fees. *See* 28 U.S.C. § 1915(a)(1).  Therefore, plaintiff's request to proceed *in forma pauperis* is GRANTED.

B.  The Prison Litigation Reform Act

The Prison Litigation Reform Act, codified at 28 U.S.C. § 1915, requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  The Court is required to dismiss the action as soon as it makes such a determination. *See id.*

Although the Court is generally required to read a plaintiff's *pro se* complaint liberally and construe it to raise the strongest arguments it suggests, see, e.g., Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173, 66 L. Ed.2d 163 (1980), here plaintiff is an attorney having been admitted to the Bar of the State of New York, First Department in 1996.[4]  Accordingly, his pleading is not entitled to the degree of liberality ordinarily given to *pro se* plaintiffs. See Dorfman v. Bruno,

---

[4]The Court takes judicial notice of plaintiff's bar admission information as maintained by the New York State Supreme Court at http://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyID=5504888.

No. 09-CV-4355, 2011 WL 197885, at *2 (E.D.N.Y. Jan. 18, 2011) (citing <u>Maloney v. Cuomo</u>, 470 F. Supp.2d 205, 209 (E.D.N.Y. 2007), *aff'd*, 554 F.3d 56 (2d Cir. 2009), *vacated on other grounds*, 561 U.S. ---, 130 S. Ct. 3541, 177 L.Ed.2d 1119 (2010)).

      C.     Federal Rule of Civil Procedure 8

      Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be simple, concise and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). In essence, Rule 8 ensures that a complaint provide a defendant with sufficient notice of the claims against him in order to answer and to prepare for trial. See <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 346-47, 125 S. Ct. 1627, 161 L. Ed.2d 577 (2005) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957), *abrogated in part on other grounds by* <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 554, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); <u>see also</u> <u>Shomo v. State of New York</u>, 374 Fed.Appx. 180 (2d Cir. 2010); <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988). In that vein, the Second Circuit has held that complaint containing only vague or conclusory accusations and no specific facts regarding the alleged wrongdoing do not allow defendants to frame an intelligent defense, fail to state a claim, and therefore are subject to dismissal. See <u>Alfaro Motors, Inc., v. Ward</u>, 814 F.2d 883, 887 (2d Cir. 1987).

      Although plaintiff has named Michael Adams ("Adams"), Michael J. Sposato ("Sposato"), John Callahan ("Callahan"), Kathleen M. Rice ("Rice"), Meg Reiss ("Reiss"), Charles Ribando ("Ribando"), Benjamin Volpicello ("Volpicello"), Robert Nigro ("Nigro"), Jane

Lauro ("Lauro"), Kamil Atta ("Atta"), John C. Sullivan ("Sullivan"), Joseph Doe, Laura Doe, Jane Doe and John Doe (together, the "Doe defendants"), as defendants in the caption of the complaint, he has provided no factual allegations against any of them in the body of the complaint. Without such allegations, these defendants do not have fair notice of the claims against them nor can they frame an intelligent defense. Accordingly, the complaint is dismissed with prejudice as against defendants Adams, Sposato, Collahan, Rice, Reiss, Ribando, Volpicello, Nigro, Lauro, Atta, and the "Doe defendants," unless plaintiff files an amended complaint as against these defendants within thirty (30) days from the date that this order is served with notice of entry upon the plaintiff.

D.    Section 1983

Section 1983 states that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Section 1983 does not create an independent substantive right, but rather is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). To state a claim pursuant to Section 1983, a complaint must contain factual allegations plausibly suggesting: (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the

8

United States. See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999); Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010); Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005).

1.     Claims Arising from the Surrogate's Court Sale

Plaintiff purports to allege a violation of his Fourteenth Amendment right to due process arising from the sale of certain real property by the Surrogate's Court during plaintiff's incarceration.[5] Compl. at 7.  Accordingly, plaintiff seeks to have this Court "'step into the shoes' of the Nassau County Surrogate's Court . . . to . . . void[] the sale." *Id.* at 16.

Plaintiff's due process challenge to the Surrogate's Court decision is barred by the Rooker-Feldman doctrine.[6]  It is well-established that

> the Rooker-Feldman doctrine deprives a federal court of jurisdiction to consider a plaintiff's claim . . . [in] 'cases brought by state-court losers complaining of injuries caused by state-court judgments

---

[5] It appears that plaintiff wished to attend the Surrogate's Court proceedings but could not due to his incarceration.  It is well-settled that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those so limited is the otherwise unqualified right given by § 272 of the Judicial Code, 28 U.S.C. § 394 [now 28 U.S.C. § 1654] to parties in all courts of the United States to 'plead and manage their own causes personally.'" Price v. Johnston, 334 U.S. 266, 285-86, 92 L. Ed. 1356, 68 S. Ct. 1049 (1948) *overruled on other grounds by* McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed.2d 517 (1991).

The Court notes, however, that plaintiff was represented during the Surrogate's Court proceeding by a *guardian ad litem*, H. William Hodges, Esq., appointed by the Surrogate's Court "to appear for and protect his interests" at the subject proceeding. *See* Order, Riordan, J., dated Jan. 7, 2010, annexed to the complaint as Doc. 1-2 at page 45.

[6] Rooker v. Fid. Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed.2d 206 (1983).

rendered before the district court proceedings commenced and inviting district court review of those judgments.'

McKithen v. Brown, 626 F.3d 143, 154 (2d Cir. 2010) (citing McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2007) ("McKithen I") (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283-84, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)). The Second Circuit instructs that the Rooker-Feldman doctrine requires

> federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced.

McKithen v. Brown, 626 F.3d at 154 (citations omitted).

Plaintiff's due process claim meets each of these requirements. First, plaintiff lost in the state Surrogate's Court when the property at issue was sold. Second, plaintiff complains that he was injured by the Surrogate's Court's decision in that he has been deprived of his "personal, financial, possessory [sic] and ownership interests" in said property. Compl. at 16. Third, plaintiff seeks review by this Court of the validity of the Surrogate's Court order. Finally, the Surrogate's Court order was rendered before plaintiff commenced this federal action. As a result, this Court lacks subject matter jurisdiction over plaintiff's due process claims. Accordingly plaintiff's Section 1983 and 1985 claims concerning the Surrogate's Court sale of the property at issue are dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3).

2.       Claims Alleging Pre-Trial and/or Pre-Sentencing Civil Rights Violations

Although difficult to discern, it appears that plaintiff claims that his civil rights were
violated by unspecified defendants immediately following his arrest and such violations
continued through sentencing.  Plaintiff claims that he was interrogated without his attorney
present following his arrest and that the "defendants tampered with [his] unencumbered and
unadulterated use of the outgoing United States mailstream for the transmittal of defense-related
documentation . . . ."  Compl. at 9 (emphasis omitted).  In addition, plaintiff claims that he was
assaulted by a corrections officer, defendant Patrick McDevitt, two (2) weeks before his criminal
trial so that plaintiff would be charged as the *aggressor* in that incident, and "estop[] then-
pending (and violence disqualifying) Bail Modification . . . result[ing] in an unsuccessful attempt
. . . to broker a plea bargain using said accusation . . . as . . . negotiating leverage . . . ."  Compl.
at 10-11.

Within the scope of plaintiff's claims, only a malicious prosecution claim "permits
damages for confinement imposed pursuant to legal process."  Townes v. City of New York, 176
F.3d 138, 149 (2d Cir. 1999) (citing Heck v. Humphrey, 512 U.S. 477, 484, 114 S. Ct. 2364,
2371, 129 L. Ed. 2d 383 (1994)).  However, plaintiff's malicious prosecution claim fails as a
result of plaintiff's conviction.  See Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir.
1980) (requiring plaintiff to establish a favorable termination of the state law prosecution).
Therefore, any section 1983 claim based upon his pre-trial incarceration for the Larceny charges
is dismissed with prejudice.

The proper avenue for plaintiff to challenge his conviction and/or sentence is a *habeas*

11

*corpus* petition under section 2254 of title 28 of the United States Code. Heck, 512 U.S. at 484. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. Insofar as plaintiff contends that his conviction was based upon his statements obtained in an unlawful interrogation, an allegation which, if proven, would imply the invalidity of his conviction, the claim must be dismissed.

Accordingly, plaintiff's Section 1983 claims arising from conduct alleged to have occurred prior to his trial and/or sentence are dismissed with prejudice and with leave to file a *habeas corpus* petition, if appropriate. Plaintiff is cautioned that Section 2254 contains certain hazards, including time limits and exhaustion requirements. *See* 42 U.S.C. §§ 2244(d)(1), 2254(b), (c).


3.     Claims Alleging that the Defendants Tampered with Plaintiff's Mail


Plaintiff also alleges, pursuant to Section 1983, that the "defendants tampered with Plaintiff's unencumbered and unadulterated use of the <u>outgoing</u> United States mailstream for the transmittal of defense-related documentation (both exculpatory and mitigating) which still persists." Compl. at 9 (emphasis in original). Given the dismissal of plaintiff's Section 1983 claims relating to his alleged pre-trial and pre-sentencing deprivations, this Court now only considers his allegation that defendants' mail tampering "still persists." *Id.*

"Interference with legal mail implicates a prison inmate's rights to access to the courts

and free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). "To state a claim for denial of access to courts - in this case due to interference with legal mail - a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." Id. at 351 (citations omitted). In addition, deliberate and malicious conduct by defendants and actual injury to the plaintiff must be alleged for plaintiff's claim to be plausible. See Lewis v. Casey, 518 U.S. 343, 351-52, 116 S. Ct. 2174, 2180, 135 L. Ed. 2d 606 (1996); see also Cancel v. Goord, No. 00 Civ. 2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001).

Plaintiff has alleged only that his legal mail was "tampered with." Compl. at 9. The complaint does not detail any specific instance where plaintiff's legal position was prejudiced as a result of the defendants' interference with his use of the mail, nor does plaintiff allege that any action take by the defendants was deliberate or malicious. Accordingly, plaintiff's Section 1983 claims of mail tampering are implausible and are dismissed with prejudice unless plaintiff files an amended complaint within thirty (30) days of the date that this order is served with notice of entry upon the plaintiff.

E.    HIPAA Claims

As noted earlier, plaintiff alleges that the defendants have violated his rights under HIPAA. Compl. at 8. The law is clear that HIPAA does not provide a private right of action. See also Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am., 639 F. Supp.2d 371, 377 (S.D.N.Y. 2009) (collecting cases for the proposition that HIPAA does not provide a private right

of action); <u>Barnes v. Glennon</u>, No. 05-CV-0153, 2006 WL 2811821, at *5 (N.D.N.Y. Sep. 28, 2006) ("No where does [HIPAA], either explicitly or implicitly, confer to private individuals a right of enforcement.") (citations omitted). Plaintiff provides no allegations regarding which defendants have violated HIPAA and in what way, but, rather, simply states that "defendants (jointly and severally) . . . violated plaintiff's privacy rights regarding his medical and/or mental health records." Comp. at 8, 10. Moreover, HIPAA allows for health information to be disclosed for judicial and administrative proceedings. *See* 45 C.F.R. § 164.512(e). Accordingly, plaintiff's HIPAA claims are dismissed with prejudice.

### F. RICO Claims

Plaintiff alleges that the "defendants (jointly and severally) are accused of having committed acts which constitute federal crimes in furtherance of said deprivation of rights in the form of violations of the Racketeering and Illegal(ly) Corrupt Organizations (RICO) Act . . . and mail fraud." Compl. at 8. Apart from this conclusory assertion, plaintiff alleges no facts to suggest a plausible RICO claim.

A plaintiff asserting a RICO violation must plead "(1) the defendant's violation of [18 U.S.C.] § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 283 (2d Cir. 2006) (citations omitted). The causation element requires plaintiff to allege that the defendant's conduct was the "legal, or proximate, cause of [his] injury, as well as the logical, or 'but for,' cause." <u>Id.</u> at 283-84; <u>see also</u> <u>Stancuna v. New Haven Legal Assistance, Inc.</u>, 383 Fed. Appx.

23, 24 (2d Cir. 2010). Moreover, "all allegations of fraudulent predicate acts [under RICO] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004) (citing Moore v. PaineWebber, Inc., 189 F.3d 165, 172 (2d Cir. 1999)).

Plaintiff has not alleged facts to support his claim that the defendants engaged in a pattern of racketeering activity required by 18 U.S.C. § 1962, nor has he alleged a fraudulent predicate act with particularity. Accordingly, plaintiff's RICO claims are dismissed with prejudice unless plaintiff files and amended complaint properly alleging his RICO claims thirty (30) days of the date that this order is served with notice of entry upon the plaintiff.

G.      1985 Claims

As plaintiff has not adequately pleaded a constitutional violation necessary to Section 1983 liability, his Section 1985 claim for the same conduct consequently fails. See Roman Catholic Diocese of Rockville Centre, New York v. Inc. Vill. of Old Westbury, No. 09 CV 5195, 2011 WL 666252 at *21 (E.D.N.Y. February 14, 2011); Zherka v. City of New York, No. 08 CV 9005, 2010 WL 4537072, at * 4 n. 4 (S.D.N.Y. Nov. 9, 2010); O'Bradovich v. Vill. of Tuckahoe, 325 F.Supp.2d 413, 426 (S.D.N.Y. 2004) ("In the absence of any claim establishing a violation of civil rights, the court must also dismiss claims of conspiracy brought under § 1985.").

IV. Conclusion

For the foregoing reasons, plaintiff's application to proceed *in forma pauperis* is granted. However, for the reasons set forth above, the complaint is *sua sponte* dismissed with prejudice as to the Section 1983 and 1985 claims: (1) arising from the Surrogate's Court sale of the real property at issue, and (2) alleging pre-trial and pre-sentencing civil rights violations. In addition, plaintiff's HIPAA claims are dismissed with prejudice. Plaintiff's claims against defendants Adams, Sposato, Collahan, Rice, Reiss, Ribando, Volpicello, Nigro, Lauro, Atta, and the "Doe defendants," the Section 1983 claims of mail tampering, the RICO claims are dismissed with prejudice unless plaintiff files an amended complaint in accordance with this order within thirty (30) days from the date this order is served with notice of entry upon plaintiff.

The Superintendent of the facility in which plaintiff is incarcerated must forward to the Clerk of the Court a certified copy of plaintiff's trust fund account for the six (6) months immediately preceding this order, in accordance with plaintiff's authorization in his *in forma pauperis* application. The agency holding plaintiff in custody must calculate the amounts specified by 28 U.S.C. § 1915(b), deduct those amounts from his prison trust fund account, and disburse them to the Clerk of the United States District Court for the Eastern District of New York. The Warden or Superintendent shall not deduct more than twenty percent (20%) from plaintiff's trust fund account.

The Clerk of the Court is directed to mail a copy of this order, together with plaintiff's authorization, to the Superintendent of the facility in which plaintiff is incarcerated and to serve notice of entry of this Order in accordance with Rule 77(d)(1) of the Federal Rules of Civil

16

Procedure, including mailing a copy of the Order to the *pro se* plaintiff at his last known address, see Fed. R. Civ. P. 5(b)(2)(c).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962).

SO ORDERED.

Sandra J. Feuerstein
United States District Judge

Dated: April 27, 2011
       Central Islip, New York